# United States District Court
## For The Southern District of New York

United States of America

Vs.

Case No: 5996 Cr.136 (JFK)

David Rosario

## Motion For Compassionate Release
## Pursuant To 18. U.S.C. 3582(c)(1)(A)

Comes now Mr. David Rosario Pro Se and respectfully moves this Court for and order reducing his sentence based off an material "Documents" that was withheld from this Honorable Courts that is extraodinary and compelling reasons that will be discussed below under the Amended 18. U.S.C. 3582(c)(1)(A)

## Introduction

Mr. Rosario was charge in the Southern District of New York by an Federal Indictment wit: Count #1- Conspieracy Racketzeering by Murder, Count #2 Conspiercy murder/ Attempt murder, Count #3 Conspiracy murder

and Murder, Count Four Murder, Count Five Using and Carrying firearm and aiding and Abetting the Using and Carrying Firearm in Relation to Conspiracy to murder and murder of Juan Tavares

Rosario pleaded Not guilty and Proceeding to trial on all Counts, he was found guilty by a Petit Jury on all Counts on January of 1998 and was Sentence to serve Life-imprisonment plus 60 Months

"The Relief Request here is Consistent with The text of the Compassionate Release statute and the Sentencing Commission's Policy Statement.

Congress did not define what Constitutes an-extraordinary and Compelling reason" warranting a Reduction of a Sentence Under 3582 (c). And the legislative history of the statute confirms that Congress intended to grant federal sentencing Courts broad discretion to Make those determinations Case-by Case and to reduce Unfair sentence

When Such Reasons exist. Congress's initial goal in passing the Comprehensive Crime Control Act was to Abolish federal parole and create a "Completely Retructed guidelines Sentencing System." S. Rep. No 98-225 at 52, 53 n. 74 (1983). But with the elimination of Parole as a Corrective Measure in Cases Where early Release is Warranted, Congress Recognized the need for an alternative Review process. It therefore Allowed for Judicial Reduction of Certain Sentences under § 3582 (c):

> The Committee believes that there maybe unusual cases in which an eventual Reduction in the length of a term of prisonment is justified by changed Circumstances. these would included cases of severillness, cases in which other extraordinary and compelling circumstances justify a Reduction of an unusally long sentence, and some cases in which the sentencing guidelines for the offense of which the defendant was convicted have been later amended to provide

a shorter term of imprisonment.

"SHOWING" Extraordinary and
Compelling REASONS

Mr. Rosario Respectfully Asserts that he
has not only "Served over 30 years of imprison
ment in Federal prison" based off a very-
valuable and material document, that was
Respectfully withheld from the "Eyes of this
Honorable district Court.

Exhitbit #A Shows proof as well as evidence
that a Confession was made under perjury
by a Government witness that he was the
one that "Actually" Carried out the Murder that
Rosario is being held accountable for and has
been incarcerated over 30 years imprisonment
for. "Government witness (SEAN BLAIR).

"When Reviewing this EX.#A it states on
November 7, 1999 Det. Billy Ralat along with
S/A Scott Conducted a Post arrest interview of
Sean Blair at the DEA office

Regarding the "Murder" of JUAN TAVARES.
SEAN Blair Confessed to the ~~DEA~~ agents that
he owed money and worked for an individual
by the name of Spidy. Spidy informed Blair
that carrying at the Murder would pay off his
drug debt. Blair than stated in the sworn
interview with the Agents that once the
victim exit the store he than followed the
victim outside of the store where he than
Confessed shooting the victim and fleeing
on foot.

Mr. ROSARIO asserts that this is the same
victim "JUAN TAVARES" that he had been
indicted for Murder a Year before this
Confession made by "SEAN Blair" as the
Record shows that Mr. ROSARIO WAS Already
indicted for this Murder of JUAN Tavares
Which is impossible because a Year-later
SEAN Blair gets arrested for JUAN TAVARES
Murder and than "Confessing" to Killing and
Shooting "JUAN TAVARES."

This document Exhibit #A was never provided

to his Attorney nor Apart of his discovery Mr. Rosario Attorney never had a fair opportunity to Challenge this document Exhibit* A to point the potential of Fraud upon the court, to prove innocence of Mr Rosario pursuant to Rule 16 of Criminal procedures:

The government upon a defendant's Request, the government must disclose to the defendant the Substance of Any Relevant oral statement made by the defendants, before or after arrest, in Response to interrogation by a person the defendant Knew was a government witness or agent The government Must disclose All and Anything Documents Post Arrest statement made by defendant or Co-defendants or Government witness (SEE) Rule 16(B)(i)(i)
Mr. Rosario obtain this Material document through Due diligence

This Exhibit* A at no point in time was ever discussed before trial after trial that there was actually a Confession made of excluding Mr. Rosario from a Murder that he has

RESPECTFULLY SERVED OVER "30 YEARS CONcerning a Murder that "has warranted so many Questionable doubts to the conviction of Mr. Rosario being indicted for Juan — Tavares Murder (victim).

Mr. Rosario points at his extraordinary and compelling reasons, IS that if he was sentence today with this Exhibit *A he could of Shown that he was not responsible for the murder of Juan Tavares and could haved proved that the government knew that Sean Blair — Testimony was "False" and the false testimony was Material. The Governments witness Sean-Blair" Testified falsely for the government inorder to Aid and Assit, and Assure the government was Successfull in Committing A "Fraud" on the Court.

Because the Government Knew, inorder to prove the Necessary Murder of Juan Tavares against Mr. Rosario the government had to have Testimony from Sean Blair a defendant that has already made a Confession

a Year later from Mr. Rosario's Arrest for this same Murder of Juan Tavares the Question is still unanswered to what the DEA Agents Actually" used as evidence to indict Mr. Rosario of Juan Tavares's murder a Year prior to this Confession by Sean Blaim on Nov. 7. 1997 ?

The governments Misconduct for withhelding a Material document that was vital to defendants defense and that prejudiced him Merely began as a deprivation of his Right to a fair trial. Mr Rosario had a Right to due process that produced a Just Result, Be that a conviction (and loss of Liberty) or An Acquital U.S. Constitutional Amendment V and XIV.

Government witness Sean Blaim, was clearly a Key member of the District Attorney Team, as his testimony and Prior Confession that was withheld was vital to secure the Conviction of Mr. Rosario on such Facts, Sean Blaim's Knowledge of evidence is Properly imputed to the government Because when a witness will-

Fully and intentionally "Conceals Materially
information, Regardless of the Otherwise Proper
Conduct of the government, such Conduct is
imputed to the Government, as part of the district
Attorney Team, (see) Freeman v. Georgia, 599
F2d 65, 69 (5th Cir.)

Mr. Rosario points at More extraordinary
or Compelling Reasons that he deserves a —
Sentence Reduction not to "Delve into the —
facts of the Case but to briefly show that the
Courts mistakenly" overlooked the fact at Mr.
Rosario's trial the Petit Jury Came back
with three verdicts, and the Jury Respectfully
* Found Mr. Rosario Not guilty of Count 4 —
the actual murder of Juan Tavares (see T.T.
pg 2362, Lines 3-22).

For that point Mr. Rosario Should had been
dismissed of the Murder Conviction, the Judge or
No one can enter the Mental process of the
Jurorn (see) Fed. Rules. of Evid. 606(B) Nor
would it be appropreonte to Question a Jury on
how and why they Render such verdict'.

With that BEEN Said that "ERROR RESulted in Violation of "Double Jeopardy Clause of the Fifth Amendment because Mr. Rosario was found not guilty of the murder Count "ONCE" by the Jury, then the Judge made the Jury go back into deliberation, From that point in time Mr. Rosario was tried Twice on the same murder after being "Acquited Once by the Jury.

In the Light of all this Mr. Rosario Respectfully deserves a sentence Reduction of time served in good faith of the grounds that are set-forth in this Set-style Motion.

On 10-17- 2023 Mr. Rosario submitted a written Request to the warden of USP #1 Coleman asking that he moves this Court for a Reduction of his Sentenced based on extraordinary and Compelling Circumstances, specifically thats due to the Changes in the Law and documents that was withheld from his discovery that would Result in "time-Served" or Supervised Release of 3 years This Request was denied by the warden on 10-17-2023 as was his subsequent Administration APPEAL of

10 1P 20

the WARDENS decision NoW to the AMENDMENTS to Section 3582(C)(1)(A) that WAS ENACTED as PART of the First step Act of 2018 Mr. ROSARiO Can Come directly to the Court.

This HONORABLE Courts has the Authority to - Reduce Mr. ROSARIO'S SENTENCE based on - Extraordinary and Compelling Circumstances that are PRESENTED here. First, it has the Jurisdiction to hear this Motion because MORE than 30-days have passed Since the WARDEN RECIEVED his REQUEST and the director of the bUREAU of PRisons (FBOP) has Not filed a Motion with this Court. Second the Changes 18.U.S.C.3582(C)(1)(A)(i) made by the First Step Act have finally VEST Courts with the Authority to decide WHEN Extraordinary and Compelling Circumstances warrant a SENTENCE Reduction. Such Circumstances Clearly Exit. Third the factors a Court must Consider and determineng an appropriate Sentence for Mr. ROSARIO the Courts has the Authority to Reduce his SENTENCE. Mr. ROSARIO asserts that the supreme Court held that evidence of Post-SENTENCING Rehabilitation maybe highly

Relevant to several of the 3553(a) factor's that Congress has expressly instructed district-Court's to consider at sentencing, Mr. Rosario has been incarcerated over the past 30 years and has no violent disciplinary infraction's but do acknowledge throughout his first part of his incarceration he has incountered a few disciplinary infractions. Mr. Rosario has "no" past history of "Violence" & any Repeated incarceration throughout his life. Mr. Rosario do understands that he pleaded not guilty and proceeded to "trial" and if the government shall argue that he took them to its "burden and did-not accept responsibility for something he was allegly accused of the court's must foresee that Mr. Rosario has a Constitutional Right to exercise his right to go to trial, this Constitutional Right does not consitute as punishment towards Mr. Rosario and the government's arguement-should not carry any weight towards this honorable court's decision determining rather to grant relief on his Compassionate Release.

(see) United States V. Juan Ledezma Rodriguez

12 of 28

3:00-CR-0071-RP). The Southern District of Iowa, United States Court granted Compassionate Release while Ledezma being incarcerated for 30 years, his disciplinary record commiting multiple infractions including being in possession of Marijuana, being in possession of a knife from the kitchen, consuming drug etc. Then yet, against all "Prognostic"'s the district Court granted his Compassionate Release and ordered his release in 2020.

Mr. Rosario asserts that in order to avoid any unwarranted disparities, Time serve or Supervised Release will be appropiate and reasonable sentence because of his ~~____~~ proof of Rehabilitation since the imposition of his incarceration of 30 years plus (see) Pepper v. United States, 562-U.S. 467, 491 (2011).

Mr. Rosario has made big improvements - Since his incarceration, he has earned - Certificates for different educational programs. Mr. Rosario has lost his Mother, father within this incarceration. He has great support through his daughter that he interacts with on a daily

basis that will have a landscaping Job lined up for him, and for Mr. Rosario to show extraordinary compelling reasons is that he was sentenced to life in Person on the fact that he was found not Guilty by a Petit Jury of Murder, but was deprived of his Right of Due-process when the District court Honorable Judge John F. Keenan forced the Jury back into deliberation after the Petit Jury had render a verdict of not <u>Guilty</u> of the murder of Juan Tavares, That Mr. Rosario has respectfully served over 30 years for, as well as the Government withholding a vaulernble and material Document "Exhibit "A" the Confession of a - Government witness Sean Blair that admitted Guilt of killing and shooting the victim Juan Tavares.

This means Mr. Rosario would never return to society ever again would not have another - chance to Redeem himself into a Better man and Person, to surround himself around Positive People, To build his trust back with family and freinds. Mr. Rosario has not optioned out from remaining innocent throughout this process

BECAUSE with everything that is left in him he crys for Mercy before this Honorable Courts for them to "foresee" that the "Loop-Holes" in his case that "Results" in extraordinary and compelling Reasons, from a Jury finding him "Not-Guilty" once, and a Government witness willingly confessed to the murder of Juan-Tavares under oath pertaining to a document Exhibit*A that was withheld from his trial.

Mr. Rosario has made positive efforts to change by enrolling in positive programs. As of now he is currently waiting to enter one of the biggest and successful programs that BOP has to offer the Challenge program that deals with goals setting positive relationships, interactings and having respect of others, and last but least it mainly focus on drug treatment and exploring the mental & physical affect of Criminal thinking and selling and using drugs. It is a proven fact from BOP's ratings that 80% of inmates that successfully completes this program normally becomes successful and not repeating its criminal

15 of 28

thinking Mr. Rosario has learned that these positive programs, helps you understand that it's never to late for change and it's not about what a person been through but about what that person has done what step he has taken to better himself. Good people make bad choices everyday it doesn't mean there bad people, it only means there human.

Mr. Rosario understand the nature of his - change, but "remains firm on his innocences with all due respect to the victims family but the record speaks for Mr. Rosario's innocences If the district court would ask the question has Mr. Rosario shown extraordinary reason compelling reasons to warrant a sentence reduction the answer would be "YES" Having found that Mr. Rosario has shown extraordinary and compelling circumstances to - warrant a sentence reduction the sentencing guidelines policy statement regarding compassionate release states that a defendant's sentence may be reduced only if the defendant is not a danger to the safety of any other person or to the -

Community as provided in 18.U.S.C. 3142(g) and the Courts determination would be in "Line with Section 3142(g) set forth in 18.U.S.C. 3553(a) if granted.

"Last but LEAST a important issue that Mr. Rosario points at to the Court that show's "extraordinary and Compelling REASONS" Misconduct of the Government (SEE Exhibit #B A Letter-Brief in opposition to Mr Rosario's motion for discovery.

Mr. Rosario Respectfully ASSERTS that his attorney filed a motion REQUESTING that the Government disclose All statements made Co-conspirator during Co-Conspirators so-called "Post-ARREST. Requesting for Seanblaine's Post-ARREST statement, THE government stated in there "Brief-letter Dated on July 17, 2003, CASE# 96 CR.126 (JFK). pg# 3.

"Upon Conclusory assumptions as to the existence of such statements or, to Any statements Exist, THE government From this point Committed

fabrication, False Statement to the Courts in there Letter-brief, Stating that they had "No Knowledge of Any Post-Arrest Statements by Sean Blair that any such statements Exist (see) Exhibit #B

But Mr. Rosario Presents Exhibit #A that- Clearly Contradicts the Government Letter- brief that "Sean-Blair" Post-Arrest Statement doesnot exist. The government has committed government "Misconduct and Mr. Rosario only prays that this Honorable Courts foresee that these extraordinary and compelling - Circumstances support his request for Time Served or 3-years Supervised Release,

And the government knew that both co- defendants Sean Blair and James Brown exspecially "James Brown" testimony" was false and the False testimony was material. The government witness James Brown testimony falsely for the government inorder to aid and assit, and to assure the government was succ- essful in committing "Fraud upon the Court,

Before Mr. Rosario end this Compassionate Release motion he ask this Honorable Courts to (see: Conception V. United States).

See) Section (B) cites- Congress in the first-step act of 2018 did not Contravence well establish Sentencing Practices pp. 11-18

(3) The Court therefore holds that the first-step act allows district Court to Consider intervening Changes of Law to Reduce or other extraordinary, Compelling Reasons Pursuant to the first-step act motion, district Courts bear the standard obligation to explain their decisions and demonstrate arguments. (see: Golan- VS. Saada, 596 U.S. _____ the district Courts is not Required to articulate anything more than a brief statement of Reasons (see Rita, V. United States 551 U.S. 338, 356).

# Conclusion

Mr. Rosario Respectfully ask this Honorable Court to grant this Motion and Reduce his Sentence to "Time Served" or 3 years of supervised Release if Necessary or to Ensure public safety and to Assit his Vocational Readiness would be Understandable to him.

Respectfully Submitted

+ _Daniel Rosario_

( Signature )

# Certificate Of Service

I Hereby Certify that a True & Correct Copy of the foregoing Motion has been furnished by U.S. Postal Service to Listed Party: United States District Court Southern District of New York: _Daniel Rosario_

U.S. Department of Justice
Drug Enforcement Administration

/ AUAREZ (Exhibit-A)

# REPORT OF INVESTIGATION

| 1. Program Code | | | | Page 1 of 2 |
|---|---|---|---|---|
| 5. By: Det.Billy Ralat<br>At: NYDETF/Group T-32 | 2. Cross File    Related Files | | 3. File No. | 4. G-DEP Identifier |
| | | | 6. File Title | |
| 7. ☐ Closed  ☐ Requested Action Completed<br>☐ Action Requested By: | | | | |
| 9. Other Officers: S/A Scott | | | 8. Date Prepared<br>11-11-97 | |

10. Report Re: Post Arrest Statement of Sean Blair

## DETAILS

1. Reference is made to all previous reports written regarding this investigation.

2. On November 7, 1997 Det.Billy Ralat along with S/A Scott conducted a post arrest interview of Sean Blair at the DEA office. Prior to the interview commencing Blair read aloud his miranda warnings from a preprinted form and initialed and signed the form indicating that he understood his rights. The miranda form was issued exhibit#N-74. Blair waived his rights and agreed to answer questions after which he made the following statement regarding the murder of Juan Tavares. Below is a synopsis of Blair's statement. Blair stated that he was first approached by an individual named Spidy to carry out the murder. Blair worked for Spidy selling drugs in Manhattan and owed Spidy approx. $2,200.00 dollars for drugs that had previously been lost. Spidy informed Blair that carrying out the murder would pay off his existing drug debt. Following the initial meet Blair met on several occasions with Spidy and a second individual named Justice to discuss carrying out the murder. During these meets several other individuals known to Blair as Lala(Charles), Infinite and Barkim were also present. On the date of the murder Blair traveled to the Bronx with Spidy and Lala(Charles). Once in the Bronx Blair and the others met with Infinite in the vicinity of where the murder was to be carried out. Infinite pointed out the victim to Blair. Blair followed the victim into a grocery store but was unable to locate the victim inside. Blair stated that he next observed the victim as the victim was exiting the store. Blair made a stop at the counter before exiting

| 11. Distribution:<br>Division<br><br>District<br><br>Other | 12.Signature (Agent)<br>Det.Billy Ralat | 13. Date<br>11-11-97 |
|---|---|---|
| | 14. Approved (Name and Title)<br>Patrick Keane<br>Sgt. | 15. Date<br>11-12-97 |

Form
J. 1994)    -6

BR-PostB6

DEA SENSITIVE
Drug Enforcement Administration
This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.
Previous edition dated 5/80 may be used.

1-Prosecutor

# REPORT OF INVESTIGATION

*(Continuation)*

| 1. File No | 2. G-DEP Identifier |
|---|---|
| | |

3. File Title

4.

Page **2** of **2**

5. Program Code

6. Date Prepared
11-11-97

---

the store behind the victim.  Once outside of the store Blair acknowledged shooting the victim and fleeing on foot.  Blair ran to the corner where Infinite was waiting for him in a red or maroon vehicle.  Infinite drove Blair to the train station where Blair took the train to Manhattan.  Blair met with Infinite and the others in Manhattan where he returned the weapon to Infinite.

## Custody of Evidence:

1.  On November 7, 1997 Det.Billy Ralat acquired ex#N-74, a miranda warnings form signed by Sean Blair at the DEA office.  Ex#N-74 was safeguarded by Det.Ralat until 11-21-97 when said exhibit was delivered to the non-drug custodian for safekeeping.

Indexing Section:

1. Sean Blair-
2. Irving Mason aka Spidy-
   DOB 10-9-68
3. Lala-Naddis#
4. Luis Rivera aka Infinite-
5. Juan Tavares-
6. Ismael Delgado aka Barkim-
7. James Brown aka Justice-

---

DEA Form
(Aug. 1994) **-6a**

BR-PostB6

**DEA SENSITIVE**
**Drug Enforcement Administration**

**1-Prosecutor**

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 5/80 may be used.



*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

June 17, 2003

**BY HAND**
The Honorable John F. Keenan
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

Re: United States v. David Rosario
96 Cr. 126 (JFK)

Dear Judge Keenan:

The Government respectfully submits this letter brief in opposition to the motion for discovery filed by petitioner, David Rosario. For the reasons set forth below, Rosario's motion should be denied.

On January 15, 1998, after a jury trial, Rosario was convicted on all counts of a five-count indictment charging him with various crimes in connection with his participation in a racketeering enterprise, including both conspiracy to murder and murder. On June 12, 1998, Rosario was sentenced to life imprisonment. In a summary order dated February 22, 1999, the Second Circuit affirmed petitioner's conviction on appeal. Rosario thereafter moved on June 13, 2001 to vacate his conviction or correct his sentence pursuant to 28 U.S.C. § 2255 ("Petition"), raising a host of claims, all of which lack merit. See Government's Letter in Opposition to Petition, dated December 9, 2001, and Government's Letter to the Court, dated December 27, 2001. The Petition remains pending before the Court.

Rosario has now moved for an order granting discovery of (1) all pretrial statements made by a co-conspirator during that co-conspirator's so-called "post-arrest debriefing"; (2) all pretrial statements made by the same co-conspirator before the grand jury; and (3) all testimony given by the co-conspirator at the subsequent trial of another co-conspirator.[1] See Discovery Motion, dated April 23, 2003, at 6-8. Rosario's instant motion, like his Petition, is meritless.

---

[1] In this letter, the Government only addresses material sought by Rosario from the Government. To the extent that Rosario seeks discovery of material allegedly in the possession of his trial counsel, the Government takes no position regarding such requests.

It is well-established that "'production need not be ordered in a § 2255 proceeding when the allegations of a prisoner do not establish a prima facie case for relief.'" Lopez v. United States, Nos. 98 Civ. 7969 (JFK), 94 Cr. 466 (JFK), 2000 WL 1229393, at *4 (S.D.N.Y. Aug. 29, 2000) (quoting United States v. Franzese, 525 F.2d 27, 32 n.8 (2d Cir. 1975)); see also Young v. United States, No. 98 CIV. 7069 (JGK), 1999 WL 820563, at *6 (S.D.N.Y. Oct. 13, 1999).

Moreover, "a habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." Bracy v. Gramley, 520 U.S. 899, 904 (1997) (citing Harris v. Nelson, 394 U.S. 286 (1969)) (in the context of Section 2254 proceedings). Indeed, Rule 6(a) of the Rules Governing Section 2255 Proceedings provides that a habeas petitioner is entitled to discovery only "if, and to the extent that, the judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise." Id. (emphasis added); Lopez, 2000 WL 1229393, at *4 (denying Section 2255 discovery request where no good cause shown and requested documents not relevant to alleged grounds for relief); see also Hurtado v. United States, No. 00 CIV. 409 (SHS), 2000 WL 890189, at * 1 (S.D.N.Y. July 5, 2000) (denying Section 2255 request because good cause not shown). Good cause is shown by "presenting 'specific allegations' which give the Court 'reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate'" entitlement to relief. Bracy, 520 U.S. at 908-09 (quoting Harris, 394 U.S. at 300); see also Hirschfeld v. Comm'r of the Div. of Parole, -- F.R.D. --, 2003 WL 21058109, at *1 (S.D.N.Y. May 9, 2003). As such, a court may deny discovery if petitioner fails to provide specific evidence that the sought-after material supports the petition. Hirschfeld, 2003 WL 21058109, at *1; Gonzalez v. Bennett, 00 CIV. 8401 (VM), 2001 WL 1537553, at *4 (S.D.N.Y. Nov. 30, 2001).

Here, Rosario has failed to establish both a prima facie case for relief and good cause for discovery. Thus, the Court should deny the instant motion.

First, with regard to Rosario's failure to establish a prima facie case for relief, the Government relies on its December 9, 2001 letter in opposition to the Petition, as supplemented by the Government's December 27, 2001 letter to the Court, which, together, fully set forth the bases for denying relief.

Second, the instant motion provides no basis for a finding of good cause to allow discovery in support of the Petition. Rosario's generalized request for a co-conspirator's statements allegedly made post-arrest, before the grand jury,[2] and at a subsequent trial[3] is either

---

[2] Rosario has likewise failed to make any showing of a particularized need for the sought-after grand jury minutes. Indeed, "[t]here is a tradition in the United States, a tradition that is 'older than our Nation itself,' that proceedings before a grand jury shall generally remain secret." Craig v. United States, 131 F.3d 99, 101 (2d Cir. 1997) (quoting In re Biaggi, 478 F.2d 489, 491 (2d Cir. 1973)). This "need for secrecy in grand jury proceedings" makes disclosure of grand jury materials the exception rather than the rule, United States v. Lester, No. S1 95 CR. 216 (AGS), 1995 WL 656960, at *9 (S.D.N.Y. Nov. 8, 1995), and it is clear that the party seeking disclosure must make a "strong showing of particularized need for grand jury materials before any disclosure will be permitted." United States v.

premised upon conclusory assumptions as to the existence of such statements or, to the extent any statements exist, lack specific factual allegations regarding what such statements will establish in support of the Petition. Moreover, the transcript excerpts cited by Rosario (assuming they accurately reflect the testimony) establish, at best, that Rosario's identity was not known by the admitted triggerman, Sean Blair, in the murder-for-hire conspiracy that resulted in the murder of Juan Tavares, and that was first contracted by Rosario and subsequently subcontracted to Blair. Of course, whether Blair, the eventual triggerman, knew Rosario's identity (also known as "Chicky") does nothing to undermine the existence of the conspiracy proven at trial. As a result, the sought-after material does not support the Petition and Rosario has not established good cause for discovery.

For the foregoing reasons, Rosario's motion seeking discovery should be denied.

Very truly yours,

JAMES B. COMEY
United States Attorney
Southern District of New York

By: _____
Brian R. Michael
Assistant United States Attorney
(212) 637-1113

cc:    David Rosario (by U.S. Mail)

---

Sells Eng'g, Inc., 463 U.S. 418, 443 (1983); see also Hamling v. United States, 418 U.S. 87, 139 n.23 (1974) (grand jury proceedings afforded "presumption of regularity" (internal citations and quotations omitted)). Where a party seeks disclosure of grand jury testimony, "a review of grand jury minutes is rarely permitted without specific allegations of government misconduct." United States v. Torres, 901 F.2d 205, 233 (2d Cir. 1990). Here, Rosario's conclusory and wholly unspecific claims regarding the Government's conduct are plainly insufficient to abrogate the "presumption of regularity" afforded grand jury proceedings, Hamling, 418 U.S. at 139 n.23, and the longstanding "policy of secrecy of grand jury proceedings." United States v. Procter & Gamble Co., 356 U.S. 677, 683 (1958).

3    Of note, it appears that Rosario already has access to the transcripts, as demonstrated by the excerpts cited in his motion.



**U. S. Department of Justice**
Federal Bureau of Prisons
Federal Correctional Complex

United States Penitentiary 1
846 N.E. 54th Terrace
Coleman, Florida 33521

October 17, 2023

RESPONSE TO INMATE REQUEST TO STAFF MEMBER

SUBJECT: Reduction In Sentence (RIS)

RE: Rosario, David
Register No: 39665-054

This is in response to your Reduction in Sentence Application, wherein you request consideration for a Compassionate Release/Reduction In Sentence under Extraordinary and Compelling Circumstances.

Title 18 of the United States Code, section 3582(c)(1)(A), allows a sentencing court, on motion of the Director of the BOP, to reduce a term of imprisonment for extraordinary or compelling reasons. BOP Program Statement No. 5050.50, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582(c)(1)(A) and 4205(g), provides guidance on the types of circumstances that present extraordinary or compelling reasons, such as the inmate's terminal medical condition; debilitated medical condition; status as a "new law" elderly inmate, an elderly inmate with medical conditions, or an "other elderly inmate"; the death or incapacitation of the family member caregiver of the inmate's child; or the incapacitation of the inmate's spouse or registered partner. Your request has been evaluated consistent with this general guidance.

Challenges to an inmate's sentence length directly related to their conviction are not considered extraordinary or compelling circumstances by the Bureau of Prisons. These challenges should be addressed by the inmate either filing a direct appeal or a habeas corpus action. Additionally, your medical care level is healthy or simple chronic care, Care Level one.

Rosario, David
39665-054
Request for Compassionate Release
Page 2

After careful consideration, your request is denied. In
compliance with Bureau of Prisons' Program Statement 5050.50,
titled Compassionate Release/Reduction in Sentence, you may
appeal this denial through the Administrative Remedy Program if
you are unsatisfied with this response.

_____        10-23-23
Shannon D. Withers, Complex Warden              Date

_____        10-25-2023
Inmate Signature                                Date

**FIRMLY TO SEAL**

**PRESS FIRMLY TO SEA**

DEC 04, 2023

10007

**$0.00**

RDC 03

R2303S104006-09



# UNITED STATES
# POSTAL SERVICE ®

# PRIORITY®
# MAIL

FROM: DAVID ROSARIO #39665-054

Federal Correctional Complex USP 1

PO BOX 1033

Coleman, FL 33521

d delivery date specified for domestic use.

c shipments include $100 of insurance (restrictions apply).*

acking® service included for domestic and many international destinations.

nternational insurance.**

ed internationally, a customs declaration form is required.

es not cover certain items. For details regarding claims exclusions see the
il Manual at *http://pe.usps.com.*

tional Mail Manual at *http://pe.usps.com* for availability and limitations of coverage.

RECEIVED
DEC 0 7 2023
CLERK'S OFFICE
S.D.N.Y.

**TO:**

United States District COURT

Southern District of New York

The Daniel Patrick Moynihan United States CourtHouse

500 PEARL STREET. NEW York, 10007-1312

# RATE ENVELOPE
= ■ ANY WEIGHT

:KED ■ INSURED



To schedule free Package Pickup,
scan the QR code.



USPS.COM/PICKUP

00001000014

EP14F July 2022
OD: 12 1/2 x 9 1/2

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® and Priority Mail International® shipments. Misuses may be a violation of federal law. This package is not for resale. EP14F © U.S. Postal Service; July 2022; All rights reserved.

see reverse side