UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
UNITED STATES OF AMERICA

        v.                                 96 Cr. 126-2 (KPF)

DAVID ROSARIO,
                     Defendant.
--------------------------------------------------------X


## MOTION FOR COMPASSIONATE RELEASE

LAW OFFICES OF NATALI J.H. TODD, P.C.
26 Court Street, Suite 413
Brooklyn, NY 11242

By:    Natali Todd
      *Attorney for David Rosario*

<u>Preliminary Statement</u>

On December 8, 2023, Mr. Rosario filed a *pro se* motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). In his motion, Mr. Rosario is seeking a sentence reduction of time served, or three years of supervised release based upon extraordinary and compelling circumstances, including his post sentence rehabilitation, his prison record (disciplinary, medical and educational), the thirty years of imprisonment he has already served for his crimes, the avoidance of sentencing disparity and an employment offer that will ensure his ability to become a contributing member of society (dkt. #855). Pursuant to the Court's Order dated December 14, 2023 (dkt. #856), please accept this supplemental motion for the reduction of Mr. Rosario's sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(I).

<u>Background</u>

On June 25, 1996, a 98-count RICO S2 indictment was returned and charged twenty-two defendants, including defendant David Rosario. The government referred to the criminal enterprise as the "Velasquez Organization" because Ramon Velasquez was alleged to be the leader of the enterprise who not only participated in multiple crimes, but directed its members and associates to commit crimes. The defendants charged in the indictment were either members or associates of the enterprise. Multiple racketeering offenses were alleged, including a total of fifteen murders, other violent conduct including attempted murders, assaults, and bombings. Drug trafficking was an integral part of the criminal conduct of its leaders, members and associates.

Various superseding indictments followed the S2 indictment and on January 21, 1997, the government filed the S9 Indictment, charging one hundred sixteen counts of criminal activity by

the Velasquez Organization, including twenty murders and other violent acts from 1988 through the filing of the indictment. The indictment alleges that members and associates of the Velasquez Organization, carried out acts of violence, including murders, at the behest of and at the direction of Ramon Velasquez.[1] In the redacted indictment, Mr. Rosario was charged in Count One, along with eight co-defendants for participating in the enterprise in violation of 18 U.S.C. §1961 and §1962(c). As to the racketeering count, four racketeering acts were alleged, including conspiracy to murder four individuals, the substantive murder of the same four individuals, and one substantive attempted murder. Count Two charged Mr. Rosario and multiple co-defendants with Racketeering Conspiracy, in violation of 18 U.S.C. §1962(d); Count Three charged Mr. Rosario and several of his co-defendants with Conspiracy to Murder Juan Tavares and the substantive charge of said murder charged in Count Four. As to Count Five, Mr. Rosario and his co-defendants were charged with violating 18 U.S.C. §924(c), which relates to Racketeering Act Four of Counts One and Two, and in Counts Three and Four of the indictment.

Mr. Rosario exercised his right to a trial and on January 15, 1998, and was found guilty of all five counts of the redacted indictment.

Count One - Racketeering
Count Two - Racketeering Conspiracy
Count Three - Conspiracy to Murder Juan Tavares
Count Four - Murder of Juan Tavares
Count Five - Using & carrying a firearm and aiding and abetting the using and carrying firearm in relation to counts 3 and 4

Although the jury had indicated that Racketeering Act Four (the murder of Juan Tavares) had not been proven, they found Mr. Rosario guilty of Count Four, which was the murder of Juan

---

[1] The five-count redacted indictment charging Mr. Rosario who was the only defendant to go to trial is attached as defense Exh. A.

Tavares.  Recognizing the inconsistency and conflict of the verdict, the Court pointed out the

inconsistency of the verdict on Count Four to the jurors and the parties, and directed the Jury to

reconsider Count Four.  Within three minutes of further deliberation, the jury sent out a note

inquiring about the automatic guilt of the substantive act if the defendant is found guilty of the

conspiracy to commit said act (Tr. 2363).[2]  This showed the jury's confusion.  The Court

answered in the negative and re-instructed the jury on that particular aspect of the law.

Deliberations resumed and shortly thereafter, the jury found Mr. Rosario guilty of the murder of

Juan Tavares charged in Count Four, although they also found the Racketeering Act for the

murder of Juan Tavares not proven.

On June 12, 1998, Mr. Rosario was sentenced[3] to concurrent life sentences on Counts

One, Two and Four; 10 years on Count Three to be served concurrently with Counts One, Two

and Four; and a five-year mandatory consecutive term on Count Five.  Essentially, a sentence of

life, plus five years.  The United States Sentencing Guidelines in 1998 which was mandatory,

mandated a sentence of life imprisonment.  On direct appeal, the Second Circuit affirmed the

conviction in a summary order.

Discussion

A defendant seeking compassionate release may file a motion with the district court 30

days after filing a request with the warden of the facility where he/she is housed.  In his *pro se*

motion for a reduction of his sentence, Mr. Rosario notes that on October 17, 2023, he submitted

---

[2] Transcript from January 15, 1998 attached as Defense Exh. B.

[3] The record reflects that Irving Mason ("Spidy/Spidey") who also participated in the murder of Juan Tavares, was convicted of five racketeering related offenses after a jury trial on July 8, 2000.  He was sentenced to thirty years of imprisonment (dkt #.528).

a written request to the warden of his facility to request a reduction of sentence on his behalf.

That request was denied on October 23, 2023 as was his subsequent administrative appeal of the

warden's decision. *See* Dkt. #855 at 26. Because more than thirty days have elapsed since that

filing, Mr. Rosario has exhausted his administrative remedies, and his motion is properly before

this Court.

On March 12, 1989, at the youthful age of twenty years old, Mr. Rosario was alleged to

be in a car with two others being chased by the police. Occupants of the car exchanged gunshots

with the police. No one was shot and all occupants of the vehicle were arrested. Mr. Rosario

was the only defendant who went to trial and was convicted of attempted murder on March 7,

1991 and sent to prison. P.S.R. ¶¶125-128. On January 23, 1997, Mr. Rosario was transferred

from state custody to federal custody. He has remained incarcerated since 1989, having served

approximately thirty-five years of incarceration. He is now fifty-five years old having spent

more than half his life in prison.

The 116-count indictment describes very serious crimes and the wanton murder of

multiple people that many defendants committed or participated in during the period of the

conspiracy over a number of years at the direction of the leader of the organization, Ramon

Velasquez. Although Mr. Rosario was not alleged to be the triggerman on any of the

shootings/murders, and was incarcerated for some of the critical violent conduct he was charged

with, it appears that his conviction post trial resulted in a much harsher sentence than any of his

co-defendants, many of whom were equally or more culpable than he was. Upon review of the

docket, it appears that all of his co-defendants were sentenced to a term of years and have

completed their sentences. Mr. Rosario was the only defendant who received a life sentence and

as of this writing, has served more prison time than any other defendant in the case. The need for a very severe sentence is obvious. At the time of his sentencing in 1998, what might not have been so obvious is that a young man (20 years old when he was first convicted of attempted murder and already in state custody for seven years when he was transferred to federal custody), was not without the promise of redemption or salvageability as a responsible person whom society will forever remove from its daily participation and contribution. The passage of time has demonstrated that Mr. Rosario is not a continuing threat to society. He is burdened physically by chronic and persistent deterioration of his health, he has immersed himself in many educational programs in keeping hope alive, he is resilient, and with his daughter and ex-wife providing him with strong support, he is hopeful that this Court will give him a second chance at living the rest of his days in a free society.

18 U.S.C. §3582(c)(1)(A) vest the Court with the power to reduce a prison term, even to time served, of any defendant it finds that (1) "extraordinary and compelling reasons warrant such a reduction," (2) the court has "consider[ed] the factors set forth in U.S.C. §3553(a) to the extent that they are applicable," and (3) "such reduction is consistent with the applicable policy statements issued by the Sentencing Commission." In *United States v. Brooker*, the Second Circuit acknowledged the limitless nature of any "other reason," holding unequivocally that "the First Step Act freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release." 976 F.3d 228, 237 (2d Cir. 2020). In its holding, the Circuit reversed and remanded a district court's denial of a compassionate release motion where the defendant's "primary complaint" was "that his sentence was too long in the first place." *Id.* In fact, the Circuit held

that "as a matter of law," a district court would not "abuse its discretion by granting someone compassionate release" on that basis that his sentence was just too long alone. *Id.* Rather, the only statutory limit on what a court may consider to be extraordinary and compelling is that "[r]ehabilitation...alone shall not be considered an extraordinary and compelling reason." *Id.* at 238 (citing 28 U.S.C. §994(t)).

The data report from the United States Sentencing Guidelines (U.S.S.G)[4] shows that in the 4th Quarter of 2023, the average sentence for murder was 285 months or 23.75 years. Courts have held that the disparity between the sentence a defendant received and the sentence he would face today can constitute an extraordinary and compelling reason to grant a sentence reduction. *See United States v. Maummau*, 993 F.3d 821, 837 (10th Cir. 2021); *United States v. McKoy*, 98 F.3d 271, 285-86 (4th Cir. 2020); *United States v. Reid*, 2021 WL837321, at *5-6 (E.D.N.Y. Apr. 29, 2020).

As noted earlier, multiple defendants were sentenced to far less prison time, having pleaded guilty to lesser offenses than that charged, and not going to trial. Multiple defendants were charged with multiple racketeering murders and conspiracy to murder, and other violent conduct; some with counts eclipsing what Mr. Rosario was charged with but were offered plea agreements for a lesser offense and were sentenced to a term of years. *See* docket sheet. From the docket sheet, it appears that Mr. Rosario was one of two defendants who went to trial but he is the only defendant to receive a life sentence. A short sampling of a few of Mr. Rosario's co-defendants who were charged in some of the same counts of conviction as he, shows the

---

[4] U.S. Sentencing Commission 4th Quarter 2023 Report attached as Defense Exh. C.

disparity[5] of the sentences meted out.

<u>Sampling of Sentences of Mr. Rosario's Co-defendants</u>

<u>Co-Defendant Ramon Velasquez</u>
Charged as the leader of the Velasquez Organization in 116 counts with an excess of 20

racketeering murders and conspiracy to murder as well as multiple violent acts. The government

filed a Nolle Prosequi on February 19, 1998. There is no record on the docket of any other

sentence.

<u>Co-Defendant James Brown</u>
For his crime of being the actual shooter on at least two murders in which Mr. Rosario

was also charged (Juan Valdez and Sarah Vasquez), as well as other crimes, he received a

sentence of 16 years.

<u>Co-Defendant Sean Blair</u>
For his crime of actually shooting to death, Juan Tavares (Mr. Rosario was also convicted

for his involvement in this crime), among other crimes, he received a sentence of ten years.

<u>Defendant Irving Mason (Spidey/Spidy)</u>
According to defendant's Exh. A (the DEA post arrest interview of Sean Blair on

11/7/97), attached to his *pro se* motion, Sean Blair was first approached by Mason to carry out

the murder of Juan Tavares, who was ultimately shot and killed by Blair. Mason was convicted

after a jury trial of 5 counts of racketeering related offenses. He was sentenced to thirty years on

April 18, 2001.

There is a long list of sentences (*see* P.S.R.) of a number of co-defendants who were

---

[5] Mr. Rosario has indicated that an informal plea offer with a cap of twenty or twenty five years was offered to him but he declined such offer and chose instead to exercise his right to a trial. Mr. Rosario was incarcerated in the state since September 1990 and was transferred into federal custody on January 23, 1997. Thus, he has been incarcerated for approximately thirty-four years.

sentenced prior to Mr. Rosario's sentence, but none of those defendants, who committed horrific crimes, were given the sentence that Mr. Rosario received. The Court should consider the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct, because the time that Mr. Rosario has already served, exceeds the sentences imposed on other members of the Velasquez Organization. 18 U.S.C. §3553(a)(6). The drastic disparity between Mr. Rosario's sentence and the sentence he would likely receive today, as well as the sentences his co-defendants received is an extraordinary and compelling reason to grant a reduction of his sentence. The goals of sentencing in the United States require not only proportionality, but that it be "sufficient, but not greater than necessary." 18 U.S.C. §3553(a).

Mr. Rosario has also demonstrated significant rehabilitation while in prison, having taken advantage of ninety-one (91) educational courses.[6] These courses include work-related classes like "Advanced Leather Class" and "Marketing"; self-improvement classes such as "Parenting" "Life Long Wellness Round" and "Radio Nutrition." His disciplinary record is not unblemished but it appears that the number of infractions has declined over the years, and he has not had any writeups since October 2021. Mr. Rosario's health has declined over the years, and in certain aspects of his medical care, sheer neglect by the Bureau of Prisons. His vision has deteriorated over the years to 20/400 and unquestionably, he has severe vision impairment. He has a long list of health problems that dates back many years including suffering from diabetes, but one thing is clear, there has been no improvement. For example, after years of complaining of his knee/leg pain (since 2011), his leg has now deteriorated and is now described as having limited range of

---

[6] Education Transcript attached as Defense Exh. D.

motion in his leg and unsteady gait as a result, shuffling his leg along with limited leg extension and rotation of the knee. The foot pain is aggravated when he walks, with severe pain and muscle cramping. He now requires the use of a cane to assist in his mobility. He has had serious abdominal pain, contributed by stomach ulcers and a host of other conditions since 2015. Mr. Rosario has lost at least 12 of his teeth due to dental disease. It is difficult for him to eat without teeth and although he was approved for dentures, he has been waiting now for seven years for his dentures. He has been reminded that he is on the National Dental Routine Treatment List but it is a long list and that he needs to be patient. He suffers from chronic back pain from degenerative discs which also impair his mobility.[7]

Despite Mr. Rosario's medical limitations, he continues to take courses because he sincerely believes it is important to grow and develop skills that give him purpose. While Mr. Rosario has been serving a life sentence with little hope of release, he earned his GED. Not only has he found purpose in the many educational courses he has taken, and dedicating himself to rehabilitation, including participating in an array of educational courses (*see* §3553(a)(2) that incarceration "provide the defendant with needed educational or vocational training, medical care, or other correctional treatment."), including taking multiple parenting class because his incarceration left his young daughter, Adrianna without a father. Mr. Rosario has succeeded in that regard because he has developed and maintained a close relationship with his daughter, who

---

[7] Selected pages of his extensive medical record is attached separately and not filed on the public docket given the sensitivity of the information and Mr. Rosario's privacy rights. Consistent with Rules 21.4 and 21.5 of the SDNY Electronic Case Filing Rules & Instructions, please accept selected pages of Mr. Rosario's medical record under seal as Defense Exh. E.

is eager for the possibility to have her father reside with her and help him get back on his feet.[8]

His relationship with his daughter, and that of his ex-wife (his daughter's mother) has withstood the test of time because they have maintained a loving and supportive relationship. His daughter Adrianna expresses that even from prison, her dad has offered her emotional support. Adrianna was but a child when her father went to prison. She too, like her dad, is hoping for a second chance to make up for lost time with him.

The Court should reduce Mr. Rosario's sentence based on his age at the time of the alleged crimes. Mr. Rosario was arrested and detained in September 1990 for state offenses at the age of twenty-one. He has remained incarcerated since that time. The government alleged that racketeering Act Two conspiracy to murder Juan Valdez occurred on dates prior to and including up to May 30, 1990 when Mr. Rosario was twenty-one years old. In 2012, the Supreme Court in *Miller v. Alabama*, 567 U.S. 460 (2012), held that mandatory life imprisonment without parole for those under 18 years of age at the time of their crime violates the Eighth Amendment's prohibition on cruel and unusual punishment. The Court explained that first, juveniles demonstrate a lack of maturity that leads to "recklessness, impulsivity, and heedless risk-taking." *Id.* (*citing Roper v. Simmons*, 543 U.S. 551, 559 (2005). Second, juveniles are more "vulnerable to negative influences and outside pressures" and lack the "ability to extricate themselves from horrific, crime-producing settings." *Id.* Third, juveniles generally have "characters" and "traits" that are less "well formed" and "less fixed" than adults, making juvenile criminal conduct "less likely to be evidence of irretrievable depravity." *Id. (citing Roper*, 543 U.S. at 570). And in *Jones v. Mississippi*, 593 U.S. 98, 105 (2021), eight Justices on

---

[8] See letter of support attached as Defense Exh. F.

the Supreme Court agreed that "youth matters in sentencing." *See id.* (Sotomayor, J., dissenting).

Since the *Miller* decision in 2012, there have been further developments and an evolution of the science of the adolescent brain. Studies of the brain maturation conducted during the past decade have revealed that several aspects of brain development affecting judgment and decision making are not only ongoing during adolescence, but continue well beyond age 20. A study funded by the Department of Justice in 2013, acknowledged that "psychological capabilities that improve decision-making and regulate risk taking  such as impulse control, emotion regulation, delay of gratification, and resistance to peer influence   continue to mature well into young adulthood."[9]  The study found that "adolescents and young adults simply do not have the physiological capacity of adults over 25 to exercise judgment or control impulses" and concluded that policymakers should implement "a categorical rule of youthfulness as a mitigating factor in sentencing" as opposed to "individualized discretion."[10]  And in 2021, clinical Neuropsychologist, Dr. Gur, Ph.D., published an article which discussed the development of brain behavior in the Journal of Pediatric Neuropsychology and noted that "[t]here is congruence of evidence across multiple methods indicating that brain maturation is not complete until young adulthood (about ages 21-25)."[11]  The Court should consider Mr. Rosario's age at the time of the

---

[9] James C. Howell et. al.  Bulletin 5: *Young Offenders and Effective Response in the Juvenile and Adult Justice Systems: What Happens, What Should Happen, and What We Need to Know*, at p.17 (2013), https://www.ncjrs.gov/pdffiles1/nij/grants/242935.pdf

[10] *Id*. at 18, 29.

[11] Article by Neuropsychologist Ruben C. Gur, Ph.D, on the Development of Brain Behavior Integration Systems Related to Criminal Culpability from Childhood to Young Adulthood: Does it Stop at 18 Years?
Journal of Pediatric Neurospychology (2021) 7:55-65 at 56.

commission of the crime as one of the many compelling factors that warrants a reduction of his sentence, consistent with the factors as set forth in 18 U.S.C. §3553(a).

The Court is well aware of the impact of the Corona Virus on Bureau of Prison facilities with the constant lock-downs and isolation. The severity of Mr. Rosario's life in prison has exceeded what anyone could have imagined. The prisons have not recovered and with a shortage of prison staff across the country, lock-downs in one's cell for weeks at a time is now commonplace.

Conclusion

For all of the foregoing reasons, Mr. Rosario respectfully requests that the Court grant his motion for a sentence reduction, and that his sentence is modified to reduce the term of imprisonment from life to time served in federal custody or 324 months (27 years), with five years of post release supervision.

Thank you for your consideration of this motion.

Dated: Brooklyn, New York
       March 14, 2024

Respectfully,

*N. Todd*
Natali Todd, Esq.
Attorney for David Rosario