DAVID ROSARIO
REG. NO. 39665-054
FCI Schuylkill
FEDERAL CORR. INSTITUTION
P.O. BOX 759
MINERSVILLE, PA 17954

September 9, 2026

Ms. Tammi M. Hellwig
Clerk of Court
U.S. District Court
Southern District of New York
Foley Square Division
40 Foley Square
New York, NY 10007

RE: *Rosario v. United States*
Case No. 1:96-cr-00126-KPF-23

Dear Ms. Hellwig:

Enclosed please find and accept for filing Movant's Motion for Compassionate Release in Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A) and the First Step Act of 2018. Please submit this document to the Court.

Thank you for your assistance in this matter.

Sincerely,

David Rosario

DAVID ROSARIO
Appearing *Pro Se*

*Encl. as noted*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, -v.- DAVID ROSARIO, Defendant. | 1:96-cr-00126-KPF-23 |

**MOTION FOR COMPASSIONATE RELEASE PURSUANT TO 18 U.S.C. § 3582(C)(1)(A) AND FIRST STEP ACT OF 2018**

COMES Defendant, DAVID ROSARIO ("Rosario"), appearing *pro se,* and in support of this memorandum would show as follows:

## I. JURISDICTION

The district court's jurisdiction to correct or modify a defendant's sentence is limited to those specific circumstances enumerated by Congress in 18 U.S.C. § 3582. The scope of a proceeding under 18 U.S.C. § 3582(c)(2) in cases like this one is extremely limited. *Dillon v. United States*, 130 S.Ct. 2683, 2687(2010). It is black-letter law that a federal court generally "may not modify a term of imprisonment once it has been imposed." *Id.* However, Congress has allowed an exception to that rule "in the case of a defendant who has been sentenced to a term

of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission." 18 U.S.C. § 3582(c)(2); see also, *Freeman v. United States*, 131 S.Ct. 2685 (2011) (reciting standard for sentence modifications). Such defendants are entitled to move for retroactive modification of their sentences. *Dillon*, 130 S.Ct. at 2690–91.

## II. STATEMENT OF THE CASE

### A. Procedural Background

On January 21, 1997, a grand jury sitting in the United States District Court for the Southern District of New York, Foley Square Division, returned a five (5) count Nineth Superseding Indictment charging Rosario. See Doc. 85.[1] Counts 1S9 and 2S9 charged Rosario with Conspiracy to Participate in the Velasquez Organization Through A Pattern of Racketeering Activity, in violation of 18 U.S.C. §§ 1961, 1962(c) and (d). *Id.* Counts 3S9 and 4S9 charged Rosario with Conspiracy to Commit Murder and Murder of Juan Tavares, in violation of 18 U.S.C.§§ 1959(a)(1), (a)(5), and 2. *Id.* Count 5S9 charged Rosario with Using and Carrying A Firearm During and In Relation to the Crimes of Violence, in violation of 18 U.S.C.§§ 924(c) and 2. *Id.*

On December 3, 1997, a jury trial commenced. No Doc. Entry.

1 "Doc." refers to the Docket Report in the United States District Court for the Southern District of New York, Foley Square Division, in Criminal No. 1:96-cr-00126-KPF-23, which is immediately followed by the Docket Entry Number.

On January 15, 1998, Rosario was found guilty as to counts 1S9 through 5S9 of the Nineth Superseding Indictment. No Doc. Entry.

On June 12, 1998, Rosario was sentenced to Life imprisonment plus 5 years, 5 years of Supervised Release, no fine or restitution, and a Mandatory Special Assessment Fee of $250. See Doc. 275.

On June 22, 1998, Rosario timely filed a Notice of Appeal. See Doc. 276.

On April 13, 1999, the United States Court of Appeals for the Second Circuit ("Second Circuit") affirmed the District Court's judgment. See Doc. 313.

On July 11, 2001, Rosario filed a Motion under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody ("§ 2255 Motion"), which was denied on August 27, 2004. See Doc. 617.

On February 28, 2006, Rosario filed a Notice of Appeal re: denial of § 2255 Motion, which was dismissed on August 25, 2006. See Docs. 663, 667.

On December 8, 2023, Rosario filed a Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(C)(1)(A). See Doc. 855.

On March 14, 2024, Rosario filed another Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(C)(1)(A)(i). See Doc. 862.

On July 24, 2024, this Court denied both Motions for Compassionate Release under 18 U.S.C. § 3582(C)(1)(A)(i). See Doc. 868.

## B. Statement of the Facts

### 1. Offense Conduct

For a period of years beginning in the late 1980s, Ramon Velasquez operated a wide-ranging, and extremely lucrative, cocaine trafficking network that serviced the New York City metropolitan area and was known as the Velasquez Organization (the "Organization"). (See PSR ¶ 37).[2] At its height, the Organization employed approximately 20 individuals and realized annual revenues in the millions of dollars. (*Id.*). Members of the Organization, including Rosario, conspired to engage and did engage in acts of violence on the Organization's behalf; these acts were directed at customers who owed the Organization money, individuals believed to be cooperating with law enforcement, and members of the Organization who were believed to have "stolen money from or breached a rule or regulation of the Velasquez Organization." (*Id.*). As a further deterrent, the Organization also threatened and committed acts of violence against the family members of these putative transgressors. (*Id.*).

Rosario was hired by Velasquez in late 1989 specifically for his aggressive and violent tendencies; his task was "to collect debts from those who owed Velasquez money and to kill those who wouldn't pay or were otherwise causing Velasquez problems." (Tr. 20; see also *id.* at 341 (noting that Rosario referred to himself as "Trigger Don")). To that end, Rosario was involved in numerous acts of violence in 1990 and 1992 in furtherance of the Organization. (See, e.g., PSR ¶¶ 39-43, 52, 82). In May 1990, in response to a dispute with Juan Valdez, the owner of an auto body shop with whom Rosario contracted to repair and make bulletproof his car, Rosario conspired with an individual named James Brown to kill Valdez; he then accompanied Brown on May 30, 1990, to Valdez's shop, where Brown shot Valdez and his brother, killing the former and wounding the latter. (Id. 1JD 39-40). Later in 1990, Rosario resolved a dispute with insurance broker Sarah Wagner by contracting

---

[2] "PSR" refers to the Presentence Report in this case, which is immediately followed by the paragraph ("¶") number.

> with Brown a second time to shoot and kill Wagner, which killing occurred on December 5, 1990. (*Id.* 41-43). As fate would have it, Rosario had been jailed since September 1990 on state charges that included attempted murder. (*Id.*TH) 124-128, 134-135). In consequence, Rosario planned the murder of Wagner during a prison visit from Brown. (*Id.* 41-42).
>
> In mid-1992, Rosario met with Brown and Ismael Delgado — again while incarcerated on the state charges — during which meeting Rosario offered them a contract to kill Juan Tavares, whom he described as a man who "owed [Rosario's] people a lot of money." (See PSR ¶ 82; Tr. 1129-41). Brown, in turn, subcontracted the killing to Sean Blair, who worked for a fellow drug dealer known as "Spidey" (i.e., co-defendant Irving Mason). (*Id.*). Tavares was shot to death on July 24, 1992. (See PSR ¶ 82).

2. Trial Proceeding

On December 3, 1997, a jury trial commenced before Judge John F. Keenan. No Doc. Entry. At trial, the Government offered witness testimony about the existence of the Velasquez Organization and Rosario's membership in it, as well as other evidence, including transcripts of conversations intercepted over a court-authorized wiretap. During trial, one of the cooperating witnesses, James Brown, testified that in approximately April of 1992, he and Ismael Delgado, a/k/a "Rarkim," visited Rosario, who was then incarcerated at Riker's Island. (Tr. 1129). During that meeting, Brown testified, Rosario offered Brown a contract to kill a man who "owed his people a lot of money." (Tr. 1129-30). This individual later was identified as Tavares. Rosario initially offered Brown $15,000 for this contract. (Tr.

1131-32). When Brown delayed in performing the contract, Rosario offered to pay him $25,000. (Tr. 1136-37). Brown testified that he decided not to carry out the contract himself; rather, he recruited an individual he knew as "Sean" a/k/a "Chink," to murder Tavares. (Tr. 1137-39). Brown testified that "Sean" had sold drugs for a friend of Brown's, who was known as "Spidey." (Tr. 1138-39). According to Brown, after Blair shot and killed Tavares, each of Brown, "Chink," and "Barkim," received $7,500; Brown testified that he was paid, in cash, by "Barkim." (Tr. 1141). Tavares was murdered on July 24, 1992. (See PSR ¶¶ 18, 19). On January 15, 1998, at the conclusion of trial, Rosario was convicted of all five counts of the Nineth Superseding Indictment in which he was charged.

3. Sentencing Proceeding

On June 12, 1998, a Sentencing Hearing was held before Judge John F. Keenan. See Doc. 275. The court sentenced Rosario to Life on Counts 1S9, 2S9, and 4S9, 10 years as to Count 3S9, to run concurrently with each other; 5 years as to Count 5S9, to run consecutively to other counts; for a tern of Life imprisonment. *Id.* The court imposed a 5-year term of supervised release. *Id.* The Court also ordered payment of a Mandatory Special Assessment Fee of $250. *Id.* Rosario timely filed a Notice of Appeal. See Doc. 276.

4. Appellate and Postconviction Proceedings

On June 22, 1998, Rosario appealed his conviction. On April 13, 1999, the Second Circuit affirmed the trial conviction. See Doc. 313. Thereafter, Rosario sought to vacate his conviction pursuant to § 2255, which Judge Keenan denied. (See July 11, 2011; Docs. 617, 654 (finding that the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), did not change the result of Rosario's § 2255 Motion, and denied Rosario's application for a certificate of appealability)). In 2019, the Second Circuit denied Rosario's request to file a second or successive § 2255 Motion. See Doc. 801.

## III. DISCUSSION

As a preliminary matter, Rosario respectfully requests that this Court be mindful that courts have a duty to construe *pro se* motions liberally. See *Tracy v. Freshwater*, 623 F.3d 90 (2nd Cir. 2010); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); and *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

Rosario recognizes that compassionate release under 18 U.S.C. § 3582(c)(1)(A) is limited. It is not a substitute for a direct appeal, a motion under 28 U.S.C. § 2255, or a vehicle for relitigating the validity of a conviction or sentence. The Supreme Court's recent decisions in *Rutherford v. United States* and *Fernandez v. United States* make that point clear. *Rutherford* holds that a nonretroactive change in

sentencing law cannot, by itself or in combination with other factors, supply the extraordinary and compelling reason required by § 3582(c)(1)(A). *Fernandez* likewise confirms that compassionate release cannot be used to attack the validity of the conviction itself.

Rosario therefore does not ask this Court to use compassionate release as a substitute for *habeas corpus*, nor does he ask the Court to declare his conviction invalid or to grant relief solely because later legal developments may have changed the way some sentencing issues are analyzed today. Instead, Rosario seeks relief based on the individualized, present-day circumstances that remain fully cognizable after *Rutherford* and *Fernandez*: the risks created by continued imprisonment, his sustained rehabilitation, his institutional conduct, his reduced danger to the community, and the fact that continued incarceration is no longer necessary to satisfy the purposes of sentencing under 18 U.S.C. § 3553(a).

Compassionate release remains available where a defendant demonstrates extraordinary and compelling personal circumstances and where the § 3553(a) factors support a reduction. That is the case here. Rosario has served a substantial portion of a serious sentence. He has matured, completed meaningful programming, maintained institutional employment, addressed substance-abuse issues, and demonstrated that he is no longer the same person who stood before this Court in 1997. His institutional

record, when considered together with his rehabilitation, and years already served, further support the conclusion that extraordinary and compelling circumstances exist. Viewed together, these circumstances present the type of individualized case for mercy that § 3582(c)(1)(A) still permits.

Moreover, under 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018, an inmate may file a motion for compassionate release after first submitting a request to the Warden of his institution and either (1) fully exhausting all administrative rights to appeal the Bureau of Prisons' denial of that request, or (2) waiting thirty (30) days from the Warden's receipt of the request, whichever occurs first. See First Step Act of 2018, Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239 (2018).

In this case, Rosario submitted a request for compassionate release to the Warden of USP Hazelton. Although the Bureau of Prisons has not responded to his request, more than thirty (30) days have elapsed since the Warden received it. Accordingly, Rosario has satisfied the exhaustion requirement set forth in 18 U.S.C. § 3582(c)(1)(A), and this Court has authority to consider the merits of his motion.

## A. Legal Standard After *Rutherford* and *Fernandez*

Section 3582(c)(1)(A) authorizes a district court to reduce a previously imposed sentence where, after considering the applicable factors under 18 U.S.C. §

3553(a), the court finds that extraordinary and compelling reasons warrant a reduction and that any reduction is consistent with applicable policy statements issued by the United States Sentencing Commission.

The Supreme Court has now clarified the limits of that authority. In *Rutherford*, the Court held that a sentencing disparity created by a nonretroactive change in law cannot itself constitute an extraordinary and compelling reason for compassionate release. The Court reasoned that when Congress changes a sentencing law but chooses not to make that change retroactive, courts may not use compassionate release to override that congressional decision.

*Fernandez* similarly confirms that compassionate release cannot be used to challenge the validity of a conviction. Claims of innocence, trial error, or legal invalidity generally belong in direct appeal or *habeas* proceedings, not in a motion under § 3582(c)(1)(A).

Those limitations do not defeat Rosario's motion. Rosario's request is not based on an effort to relitigate guilt or to obtain retroactive application of a new sentencing rule. His request is based on who he is today, what has changed during his incarceration, his demonstrated rehabilitation, and whether continued incarceration remains necessary under § 3553(a).

That distinction matters. *Rutherford* and *Fernandez* narrowed the legal-error and nonretroactivity theories of compassionate release, but they did not eliminate compassionate release based on changed personal circumstances, medical hardship, rehabilitation combined with other factors, family circumstances, institutional record, reduced risk, or the totality of a defendant's present condition. Rosario's motion should be evaluated under that individualized framework.

The Court's consideration of Rosario's motion is also consistent with Second Circuit precedent interpreting the compassionate-release statute and the Sentencing Commission's policy statement. In *United States v. Brooker*, 976 F.3d 228, 234–37 (2d Cir. 2020), the Second Circuit held that U.S.S.G. § 1B1.13 was not an applicable, binding policy statement for defendant-filed motions under 18 U.S.C. § 3582(c)(1)(A), and that district courts were free to consider the full range of circumstances that could constitute "extraordinary and compelling reasons" warranting a sentence reduction. The court emphasized that, following the First Step Act, district courts possess broad discretion to determine whether extraordinary and compelling circumstances justify compassionate release, subject to consideration of the factors set forth in 18 U.S.C. § 3553(a).

Since *Brooker* was decided, however, the Sentencing Commission has substantially amended U.S.S.G. § 1B1.13, effective November 1, 2023. The amended

policy statement expressly applies to defendant-filed motions and expands the circumstances that may constitute extraordinary and compelling reasons, including certain changes in law and unusually long sentences, while providing a framework for evaluating such motions. Although the amended policy statement now provides applicable guidance for defendant-filed motions, the Second Circuit's recognition in Brooker of the district court's authority to conduct an individualized assessment remains relevant to the Court's analysis. Ultimately, the Court must determine whether the circumstances presented constitute extraordinary and compelling reasons and whether a sentence reduction is consistent with the factors set forth in 18 U.S.C. § 3553(a).

Rosario's request is fully consistent with the amended policy statement. He does not seek relief based upon a nonretroactive change in law, nor does he attempt to use compassionate release as a substitute for collateral review. Rather, Rosario relies upon the types of individualized circumstances that remain cognizable under both the amended § 1B1.13 and the Supreme Court's recent decisions in *Rutherford* and *Fernandez*, including his sustained rehabilitation, institutional record, reduced danger to the community, viable release plan, and the totality of his present circumstances. Accordingly, granting relief in this case would be entirely consistent with both *Jones* and the Sentencing Commission's current policy statement.

### B. Rosario's Medical Conditions, Rehabilitation, Institutional Record, and Present Circumstances Establish Extraordinary and Compelling Reasons for Relief

Rosario's health has steadily deteriorated over the years, while significant gaps and delays in his medical and dental care have left several of his conditions unresolved. His declining physical condition has substantially affected his mobility, ability to perform ordinary daily activities, and overall quality of life. Rather than experiencing improvement with age and continued incarceration, his longstanding medical conditions have progressively worsened.

Rosario suffers from severe vision impairment, with his vision deteriorating to approximately 20/400. He also has a longstanding history of Diabetes and other chronic medical conditions requiring ongoing care. His physical mobility has likewise declined significantly. Since at least 2011, Rosario has repeatedly complained of knee and leg pain. Over time, his condition has progressed to limited range of motion, limited extension and rotation of the knee, and an unsteady gait. He now shuffles his leg when walking and requires a cane for assistance. Walking aggravates the pain in his foot and is accompanied by severe pain and muscle cramping, making ordinary movement increasingly difficult.

Rosario also suffers from chronic back pain associated with degenerative discs, which further restricts his mobility and compounds the difficulties caused by his

knee, leg, and foot conditions. His physical limitations are therefore not attributable to a single isolated condition but reflect the cumulative effect of multiple longstanding and progressively worsening ailments.

His gastrointestinal and dental conditions have similarly imposed significant burdens on his daily life. Since approximately 2015, Rosario has experienced serious abdominal pain associated with stomach ulcers and other gastrointestinal conditions. In addition, he has lost at least twelve teeth as a result of dental disease, making it difficult for him to eat properly. Although he was approved for dentures, he has reportedly waited approximately seven years without receiving them. He has repeatedly been told that he remains on the National Dental Routine Treatment List and must continue to wait.

Taken together, these conditions demonstrate a substantial decline in Rosario's health and functional capacity. His severe visual impairment, chronic diabetes, debilitating leg and knee problems, unsteady gait, chronic back pain, foot pain and cramping, gastrointestinal problems, and extensive dental deterioration have progressively impaired his ability to walk, maintain his mobility, eat comfortably, and manage ordinary activities of daily living. The prolonged delays in obtaining necessary dental and other medical care have further compounded the impact of these conditions.

Additionally, Rosario's rehabilitation and institutional record are particularly significant when considered together with his present age. Rosario is now 58 years old, having spent approximately three decades in federal custody. His age is not merely a chronological fact; empirical research demonstrates that advancing age is strongly associated with a substantially reduced risk of recidivism. That evidence is directly relevant to the Court's assessment of the § 3553(a) factors, including the need to protect the public and the extent to which continued incarceration remains necessary to accomplish the purposes of sentencing. See Exhibit 1.

The United States Sentencing Commission has repeatedly documented the strong relationship between age and recidivism. In its study of more than 25,000 federal offenders released in 2005, the Commission found that offenders over 60 years old at the time of release had a 16.0% recidivism rate, compared with 67.6% among offenders released before age 21. The Commission concluded that age was closely associated with recidivism and that older offenders were substantially less likely to recidivate than younger offenders.

More recently, the Sentencing Commission's 2022 study of older federal offenders reached the same conclusion. It found that older offenders had a 21.3% recidivism rate—less than half the 53.4% rate for offenders under age 50. The Commission further reported that recidivism rates decreased as offenders' age

increased and that recidivism events involving older offenders tended to be less serious and took longer to occur.

These findings are highly relevant to Rosario. At 58, he is no longer the same person who committed the offenses for which he received his original sentence. He is an aging prisoner who has experienced the consequences of nearly three decades of incarceration and whose present circumstances are materially different from those existing at the time of sentencing. The statistical evidence concerning age, moreover, is reinforced by the BOP's individualized assessment of Rosario: as of June 11, 2026, the BOP classified him as a "LOW" recidivism risk. *Id.*

His recent institutional conduct provides further individualized evidence that his risk of reoffending has diminished. *Id.* Rosario arrived at USP Hazelton on February 13, 2024, and the BOP reports that he has maintained clear conduct since his arrival. The BOP further states that his interactions with staff and other inmates are appropriate and that there are no management concerns at this time. Thus, the Court is not being asked to rely upon age alone. Rather, age-related reductions in recidivism are corroborated by Rosario's own recent institutional record.

Rosario's age also intersects with his physical condition. His advancing age has been accompanied by significant and progressively worsening medical problems, including severe vision impairment, chronic medical conditions, chronic pain,

deteriorating mobility, gastrointestinal problems, and substantial dental deterioration. These conditions further distinguish his present circumstances from those that existed when his sentence was imposed. The Sentencing Commission has recognized that age and infirmity are important considerations in evaluating older federal offenders, including because physical disabilities become increasingly prevalent as offenders age.

Accordingly, the public-safety considerations that may have justified continued incarceration earlier in Rosario's sentence must be evaluated against the realities of his present circumstances. He is now 58, has served approximately three decades in custody, has demonstrated years of educational and personal development, has completed his financial obligations, and has a concrete release plan involving residence with his adult daughter in the Bronx. *Id.* His present institutional classification is one of low recidivism risk, and his recent disciplinary record reflects clear conduct and appropriate interactions with staff and inmates.

Rosario therefore does not contend that his age, standing alone, guarantees that he will never reoffend. Rather, the available empirical evidence establishes that the risk of recidivism declines substantially with age, while his own institutional record provides additional evidence that his risk has diminished. When these considerations are combined with his extensive rehabilitation, his low BOP recidivism-risk

classification, his decades of incarceration, and his serious and deteriorating medical condition, they weigh strongly in favor of finding that continued imprisonment is no longer necessary to protect the public to the same extent that it may have been at an earlier point in his life.

This evidence also bears directly upon the § 3553(a) factors. The Court may reasonably conclude that Rosario's present age, diminished recidivism risk, sustained rehabilitation, and current physical limitations substantially reduce the need for continued incarceration as a means of deterrence and public protection. These circumstances, considered together with the other grounds supporting compassionate release, support a sentence reduction that recognizes not only the seriousness of Rosario's original offenses, but also the person he has become after nearly thirty years of imprisonment.

### C. Rosario's Sentencing History and Subsequent Developments Support Relief Under the § 3553(a) Factors

Rosario recognizes that compassionate release is not a substitute for direct appeal or collateral review. Accordingly, he does not ask this Court to invalidate his conviction, vacate his sentence, or resolve any legal claim that properly belongs in a proceeding under 28 U.S.C. § 2255. Nor does he contend that subsequent legal developments, standing alone, constitute an extraordinary and compelling reason for

relief. *Rutherford* forecloses that argument.

Nevertheless, the Court is not required to ignore the broader context of Rosario's sentence when evaluating the factors set forth in 18 U.S.C. § 3553(a). The Supreme Court has repeatedly recognized that sentencing is an individualized process and that courts may consider a wide range of information when exercising sentencing discretion. See *Concepcion v. United States*, 142 S. Ct. 2389, 2396 (2022). Thus, while Rosario does not rely upon legal developments as an independent basis for compassionate release, the Court may consider the circumstances surrounding his sentence as part of the overall determination of whether continued incarceration remains necessary to accomplish the purposes of sentencing. Also, Rosario does not dispute the seriousness of the offenses for which he was sentenced. The § 3553(a) inquiry, however, is not frozen at the moment sentence was imposed. In considering a compassionate release motion, the Court is permitted to assess the defendant's circumstances as they exist at the time relief is sought and to determine whether the purposes of sentencing continue to justify the existing sentence. *United States v. Brooker*, 976 F.3d 228, 237–38 (2d Cir. 2020). The Second Circuit has likewise recognized that the district court retains substantial discretion in determining the weight to assign to the individual § 3553(a) considerations. *United States v. Keitt*, 21 F.4th 67, 72–73 (2d Cir. 2021).

Importantly, Rosario has used his years of incarceration to acquire practical skills and knowledge that can assist him upon release. His BOP record reflects completion of vocational training in culinary arts and advanced leather work, as well as programs addressing employment and job skills, financial and consumer skills, personal growth and development, career planning, decision-making, productivity, leadership, parenting, nutrition, wellness, and work-life balance. These programs have provided him with transferable vocational, financial, interpersonal, and life-management skills that can be utilized as he transitions back into the community.

His preparation for reentry is further demonstrated by his completion of the Financial Responsibility Program and satisfaction of his financial obligations, as well as his identified plan to reside with his adult daughter in the Bronx upon release. Thus, Rosario's institutional record reflects not only rehabilitation, but preparation for functioning responsibly and productively outside prison.

These developments materially distinguish Rosario's present circumstances from those existing when he was sentenced. His advanced age, declining health, lengthy imprisonment, accumulated vocational and life skills, rehabilitation, and current institutional record demonstrate that the purposes of punishment, deterrence, and public protection have been substantially served. Accordingly, when the Court evaluates the § 3553(a) factors based upon Rosario's circumstances today—not solely

those existing nearly thirty years ago—the balance supports a reduction of his sentence.

Even where extraordinary and compelling reasons exist, a district court must determine whether a sentence reduction is consistent with the purposes of sentencing set forth in 18 U.S.C. § 3553(a). Those factors include the nature and circumstances of the offense, the history and characteristics of the defendant, the need for the sentence imposed, the need to avoid unwarranted disparities, and the need to provide medical care in the most effective manner. See 18 U.S.C. § 3553(a).

When those factors are evaluated based upon Rosario's present circumstances rather than solely the facts that existed at sentencing, they strongly support a reduction of sentence.

The history and characteristics of the defendant likewise favor relief. Section 3553(a) requires the Court to consider not only who Rosario was at sentencing, but who he is today. The record demonstrates substantial personal growth during his incarceration. Rosario has pursued educational opportunities, participated in cognitive-behavioral programming, completed substance-abuse treatment, maintained institutional employment, and consistently worked toward self-improvement. These accomplishments were not achieved over a matter of weeks or months. They represent years of sustained effort and personal commitment.

The Court may also consider the significant punishment Rosario has already endured. Rosario has spent almost thirty years in federal custody. Those years have not been symbolic. They have involved separation from family, loss of freedom, restricted opportunities, and the daily realities of incarceration. The sentence has already achieved substantial punitive effect.

Importantly, the need for specific deterrence has been largely satisfied. Rosario has experienced firsthand the consequences of his criminal conduct. The lengthy period of imprisonment already served has sent a powerful deterrent message both to Rosario and to others who may contemplate similar conduct. Additional years of incarceration are unlikely to produce any meaningful incremental deterrent effect beyond that already achieved.

Likewise, the need to protect the public has been significantly reduced. As discussed above, Rosario has demonstrated through his conduct, programming, treatment participation, and institutional adjustment that he no longer presents the same risk that existed at the time of sentencing. The record before the Court reflects maturity, accountability, and a commitment to lawful conduct rather than continued criminal behavior.

Indeed, one of the central questions presented by § 3553(a) is whether the remaining years of imprisonment continue to serve a meaningful purpose. Rosario

respectfully submits that they do not. The goals of punishment, deterrence, protection of the public, and respect for the law have already been substantially achieved. Continuing incarceration despite Rosario's rehabilitation, medical deterioration, educational accomplishments, and reduced recidivism risk risks transforming a sentence that was once appropriate into one that is greater than necessary to accomplish the statutory purposes of sentencing.

The Court should also consider that any reduction of sentence would not occur in a vacuum. Rosario would remain subject to a term of supervised release and any additional conditions the Court deems appropriate. Those conditions would provide a structured framework for reintegration, accountability, treatment, and monitoring while simultaneously protecting the public.

Finally, the overarching command of § 3553(a) is that a sentence must be sufficient, but not greater than necessary, to accomplish the purposes of federal sentencing. That principle is commonly referred to as the "parsimony principle" and remains the guiding directive of federal sentencing law. When Rosario's present circumstances are considered as a whole—including his charges, remarkable rehabilitation, medical issues, institutional record, maturity, reduced danger to the community, substantial time already served, and the significant punitive effect of nearly thirty years of incarceration—the continued service of the remainder of his

sentence is greater than necessary to accomplish the purposes of sentencing.

The Court is not required to ignore the profound changes that have occurred during Rosario's incarceration. As the Supreme Court recognized in *Pepper v. United States*, 562 U.S. 476, 492 (2011), evidence of post-sentencing rehabilitation provides the most current and accurate picture of a defendant's history and characteristics. The record before this Court demonstrates that Rosario has used nearly thirty years of incarceration to educate himself, address substance-abuse issues, improve his decision-making, maintain institutional employment, and prepare for a law-abiding future. Those developments are directly relevant to the Court's determination of what sentence is sufficient, but not greater than necessary, under § 3553(a).

For all of these reasons, the factors set forth in 18 U.S.C. § 3553(a) strongly favor a reduction of sentence and support the exercise of this Court's discretion under 18 U.S.C. § 3582(c)(1)(A).

## VI. CONCLUSION

Compassionate release remains an extraordinary remedy reserved for extraordinary cases. Rosario respectfully submits that his case is one of them.

This motion does not ask the Court to revisit the validity of Rosario's conviction, relitigate issues previously decided, or circumvent the limitations governing collateral review. Nor does Rosario seeks relief based solely upon a change

in law or a sentencing disparity. Rather, Rosario asks this Court to evaluate the person he is today.

The record demonstrates that Rosario suffers from lengthy sentence. It further demonstrates years of meaningful rehabilitation, educational achievement, substance-abuse treatment, institutional employment, personal growth, and positive adjustment to incarceration. The evidence before the Court establishes that Rosario has accepted responsibility for his conduct, used his incarceration productively, and worked diligently to prepare himself for a law-abiding future.

Rosario has now served a substantial term of imprisonment. The goals of punishment, deterrence, protection of the public, and respect for the law have been achieved. Continued incarceration is not necessary to protect the community, nor is it necessary to accomplish the purposes of sentencing. To the contrary, requiring Rosario to continue serving the remainder of his sentence despite his demonstrated rehabilitation, and reduced risk of recidivism would result in a sentence that is greater than necessary to satisfy the objectives of 18 U.S.C. § 3553(a).

Federal sentencing is intended to punish wrongdoing, but it is also intended to recognize genuine transformation when it occurs. The compassionate-release statute reflects Congress' judgment that, in rare and compelling cases, mercy and justice may ultimately point in the same direction. Rosario respectfully submits that this is such

a case.

After considering the totality of the circumstances, including Rosario's medical condition, rehabilitation, institutional record, sentencing history, diminished danger to the community, and the applicable factors under 18 U.S.C. § 3553(a), this Court should exercise its discretion under 18 U.S.C. § 3582(c)(1)(A) and impose reduced sentence as the Court deems just and appropriate, followed by the previously imposed term of supervised release and any additional conditions deemed necessary to protect the public and facilitate Rosario's successful reentry into society.

WHEREFORE, Defendant DAVID ROSARIO, respectfully requests that this Court grant his Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A), reduce his sentence accordingly, and grant such further relief as the Court deems just and proper.

Respectfully submitted,

Dated: September 9, 2026

David Rosario

DAVID ROSARIO
REG. NO. 39665-054
FCI Schuylkill
FEDERAL CORR. INSTITUTION
P.O. BOX 759
MINERSVILLE, PA 17954
Appearing *Pro Se*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 9, 2026, I mailed a true and correct copy of the above and foregoing Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A) and the First Step Act of 2018 was sent via U.S. Mail, postage prepaid, to Jacob Harris Gutwillig, Assistant U.S. Attorney, Office of the U.S. Attorney - SDNY, One Saint Andrew's Plaza, New York, NY 10007.

David Rosario

DAVID ROSARIO

MR. David Rosario
#39665-054
FCI
Federal Corr. INSTITUTION
P.O. BOX
MINERSVILL, PA 17954




SDNY

RECEIVED
OCT 14 2026
CLERK'S OFFICE
S.D.N.Y.

TO:
Ms. Tammi M. Hellwig
Clerk of Court
U.S. District Court
Southern District of New york
Foley Square Division
40 Foley Square
New york, NY 10007

(Legal MAIL)

ProSe